MICHAEL A. LADRA, SBN 64307
DAVID H. KRAMER, SBN 168452
MICHAEL B. LEVIN, SBN 172329
JACK I. LERNER, SBN 220661
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant
Plumtree Software, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATAMIZE, L.L.C., a Wyoming limited liability corporation,<br><br>           Plaintiff,<br><br>    v.<br><br>PLUMTREE SOFTWARE, INC., a Delaware corporation,<br><br>           Defendant. | CASE NO.: C02-5693 VRW<br><br>**DEFENDANT PLUMTREE SOFTWARE, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,014,137 FOR FAILURE TO COMPLY WITH 35 U.S.C. § 112 ¶ 2 (INDEFINITENESS)**<br><br>Date: June 3, 2004<br>Time: 2:00 PM<br><br>Before: The Honorable Vaughn R. Walker<br>          Courtroom 6, 17th Floor |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

TABLE OF ABBREVIATIONS .......................................................................................................... iii

NOTICE OF MOTION .......................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 2

I.    INTRODUCTION ....................................................................................................................... 2

II.    FACTUAL BACKGROUND .................................................................................................... 3

    A.    The '137 Patent's Sole Independent Claim Recites *Three* Separate Limitations Using the Term "Aesthetically Pleasing." ............................................ 4

    B.    In a Related Patent Application, the Patent Examiner Found (and Datamize Conceded) that "Aesthetically Pleasing" is Indefinite. ............................................ 5

III.    ARGUMENT ............................................................................................................................. 6

    A.    Indefiniteness is a Purely Legal Issue Suitable for Summary Judgment. ................ 6

    B.    "Aesthetically Pleasing" Is an Indefinite Claim Term. ............................................ 7

        1.    The Ordinary Meaning of "Aesthetically Pleasing" is Vague. ................... 8

        2.    The Specification Does not Provide Any Precision to the Term "Aesthetically Pleasing." ................................................................................ 9

        3.    The Case Law Establishes that Subjective Terms such as "Aesthetically Pleasing" are Indefinite. ....................................................... 10

    C.    The Prosecution History for the Related '040 Patent Further Shows that "Aesthetically Pleasing" is Indefinite. .................................................................. 12

    D.    Datamize's Proposed Claim Construction of "Aesthetically Pleasing" Provides No Clarity to the Term and Contradicts the '137 Patent's Specification. ............................................................................................................ 13

IV.    CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Allen Eng'g Corp v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) ...... 7

*Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313 (Fed. Cir. 2003) ...... 7

*Apple Computer v. Microsoft Corp.*, 799 F. Supp. 1006 (N.D. Cal. 1992) ...... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...... 6

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572 (Fed. Cir. 1996) ...... 11, 13

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) ...... 13

*Honeywell Int'l, Inc. v. International Trade Comm'n*, 341 F.3d 1332 (Fed. Cir. 2003) ...... 7, 11

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000) ...... 11

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ...... 7

*Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340 (Fed. Cir. 2004) ...... 12, 14

*Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464 (Fed. Cir. 1993) ...... 7

*Mossman v. Broderbund Software, Inc.*, 51 U.S.P.Q.2d 1752, 1999 U.S. Dist. LEXIS 8014 (E.D. Mich. 1999) ...... 7, 10, 11

*Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999) ...... 13

*STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740 (D. Md. 1999) ...... 11, 14

*Semmler v. American Honda Motor Co.*, 990 F. Supp. 967 (S.D. Ohio 1997) ...... 11

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ...... 8, 9

### STATUTES

35 U.S.C. § 112, ¶ 2 ...... 1, 2, 3, 6, 7, 16

### RULES

Fed. R. Civ. P. 56 ...... 1, 6

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| '137 patent | U.S. Patent No. 6, 014,137, attached as Levin Decl. Ex. A. |
| '040 patent | U.S. Patent No. 6,460,040. |
| Levin Decl. | Declaration of Michael B. Levin in Support of Plumtree's Motion for Summary Judgment of Invalidity of the '137 Patent for Failure to Comply with 35 U.S.C. § 112, ¶ 2 (Indefiniteness), filed concurrently with this motion. |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on June 3, 2004 at 2:00 PM or as soon thereafter as may be heard, in the courtroom of the Honorable Vaughn R. Walker, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Defendant Plumtree Software, Inc. ("Plumtree") will and hereby does move for summary judgment that the claims of U.S. Patent No. 6,014,137 ("the '137 patent") are invalid for failing to comply with 35 U.S.C. § 112, ¶ 2.

Plumtree moves for summary judgment that the '137 patent is invalid on the ground that, as a matter of law, the term "aesthetically pleasing" (which appears three times in claim 1 of the '137 patent) is indefinite under 35 U.S.C. § 112, ¶ 2. In the present case, claim construction briefing is scheduled to begin on July 16, 2004, and the Court has scheduled a claim construction hearing for September 1, 2004. *See* Civil Minutes (9/2/2003) at 2 (Docket No. 23). Plumtree is bringing the present motion for summary judgment because Plumtree believes that by resolving this purely legal issue (whether the term "aesthetically pleasing" is indefinite), the Court can dispose of the entire case — and thereby avoid the burden and expense of construing the remaining terms of the '137 patent.

This motion is made pursuant to Fed. R. Civ. P. 56, Civil Local Rule 56-1, and Judge Walker's Standing Orders. Plumtree bases this motion upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; and the Declaration of Michael B. Levin in Support of Plumtree's Motion for Summary Judgment of Invalidity of the '137 Patent for Failure to Comply with 35 U.S.C. § 112, ¶ 2 (Indefiniteness) ("Levin Decl."), filed concurrently with this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

It is a truism that "beauty is in the eye of the beholder." Beauty is the subject of art; artists, poets and authors create works of art extolling the beauty of individuals or things. However, beauty is not in the province of science, as it cannot be objectively quantified or described. Utility patents thus do not concern themselves with beauty, as patents define the boundaries of intellectual property in a way that people must be able to predictably rely upon, demanding objective measures so that potential infringers know what they can and cannot do without a license.

The patent laws require that claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Claims that fail to comply with § 112, ¶ 2 are invalid. Unfortunately for Datamize, the '137 patent in suit contains a claim element that is the subjective and vague equivalent of "beautiful" — "aesthetically pleasing." This phrase, which appears no less than three times in the body of the only independent claim of the patent, is incapable of precise definition, and is therefore the epitome of a subjective, indefinite claim term. Neither the '137 patent's claims nor the specification provide any guidance for determining whether something is aesthetically pleasing. Indeed, the specification suggests that "aesthetically pleasing" is a matter of opinion and subject to change over time. *See* '137 patent at 3:57-62, 3:66-4:3.

Plumtree is not alone in its belief that "aesthetically pleasing" is indefinite. During the prosecution of the continuation application to the '137 patent, the Patent Office found the identical "aesthetically pleasing" language to be "unclear" and indefinite, in violation of 35 U.S.C. § 112 ¶ 2. Datamize acquiesced in this conclusion and removed the language from the continuation. The phrase remains, however, in the patent in suit.

Because "aesthetically pleasing" is necessarily subjective, it prevents a party from obtaining notice as to the reasonable scope of the claims. Accordingly, Plumtree submits that the '137 patent should be declared invalid for failing to distinctly claim the alleged invention pursuant to 35 U.S.C. § 112 ¶ 2.

## II. FACTUAL BACKGROUND

Plumtree develops, markets, and licenses "corporate portal" software. *See* Levin Decl., ¶ 8, Ex. G at PSI/D 023779; *Id.*, ¶ 9, Ex. H at 4. A corporate portal is web-based software that brings together a variety of applications and information in a comprehensive platform within an organization. *See* Levin Decl., Ex. H at 4. Plumtree's customers use its software to develop their own corporate Intranet sites, which allow individual employees and groups of employees to access, manage and search a variety of information from both within and outside of the organization. *See* Levin Decl., Ex. G at PSI/D 023770; Ex. H at 3-4. Employees use standard web browsers and personal computers to access the corporate portal. *See* Levin Decl., Ex. G at PSI/D 023779; Ex. H at 3; Ex. I. For example, Mazda North America uses Plumtree's software to maintain a corporate portal for Mazda's sales and customer service field managers. By accessing the corporate portal, Mazda employees can view sales information and results from customer surveys. *See id.*, ¶ 10, Ex. I (showing screenshot of Mazda corporate portal viewed through Microsoft Internet Explorer).

Datamize L.L.C. ("Datamize") alleges that Plumtree's corporate portal software infringes the '137 patent. *See* Levin Decl., ¶ 11, Ex. J n.2. The '137 patent's claims recite an "electronic kiosk system having a plurality of interactive electronics kiosks" and a method for "defining custom interface screens customized for individual kiosks." '137 patent at 20:37-38, 20:40 (attached as Exhibit A to the Levin Decl.). The '137 patent acknowledges that there are "a number of [prior art] commercial authoring software products" for creating and modifying computer interface screens. *Id*. at 3:5-7. The '137 patent discloses an alleged improvement over the prior art authoring tools. This alleged invention is a kiosk authoring tool that provides the individual who is creating the kiosk system ("the system author") with a "limited range of choices" for customizing the kiosks' interface screens. '137 patent at 3:52-57. The authoring tool of the alleged invention will only present the system author with choices that the creators of the authoring tool deems to be "stylistic" and "aesthetic." *See* '137 patent at 3:52-66. By so doing, the authoring tool "may be used by persons with little or no experience in the intricate

1 details of computer programming thereby making it easier for a larger number of persons to set up kiosk interface screens." *Id*. at 3:48-50.

### A. The '137 Patent's Sole Independent Claim Recites *Three* Separate Limitations Using the Term "Aesthetically Pleasing."

The '137 patent contains only one independent claim (claim 1), which recites in part:

> 1. In an electronic kiosk system having a plurality of interactive electronic kiosks for displaying information provided by a plurality of information providers, a method for defining custom interface screens customized for individual kiosks of said plurality and operable to make different assortments of said information available for display at different kiosks of said plurality, said method comprising the steps of:
>
> . . .
>
> [b] providing a plurality of pre-defined interface screen element types, each element type defining a form of element available for presentation on said custom interface screens, **wherein each said element type permits limited variation in its on-screen characteristics in conformity with a desired uniform and *aesthetically pleasing look and feel* for said interface screens on all kiosks of said kiosk system**,
>
> > each element type having a plurality of attributes associated therewith, wherein each said element type and its associated attributes are subject to pre-defined constraints **providing element characteristics in conformance with said uniform and *aesthetically pleasing look and feel* for said interface screens**, and
>
> . . .
>
> [d] assigning values to the attributes associated with each of said selected elements consistent with said pre-defined constraints, **whereby the *aggregate layout* of said plurality of selected elements on said interface screen under construction will be *aesthetically pleasing*** and functionally operable for effective delivery of information to a kiosk user;
>
> . . .

'137 patent at 20:37- 21:23 (emphases added).

The first two limitations at issue, found in step 1[b], recite an "aesthetically pleasing look and feel." This step indicates that when the kiosk system author is constructing the interface screens for the kiosk system, the authoring tool presents a set of choices for each screen element in conformity with an "aesthetically pleasing" look and feel. The third limitation at issue, found in step 1[d], recites an "aggregate layout" that "will be aesthetically pleasing." Step 1[d] indicates that, for the kiosk interface screen under construction, values are assigned to the screen

elements' attributes such that the interface screen's aggregate layout will be aesthetically pleasing.

The remaining claims of the '137 patent (claims 2 through 10) are all dependent on claim 1, and therefore also contain the same "aesthetically pleasing" limitations found in claim 1. *See* '137 patent at 21:24 - 22:41.

**B.  In a Related Patent Application, the Patent Examiner Found (and Datamize Conceded) that "Aesthetically Pleasing" is Indefinite.**

Datamize filed a continuation application to the '137 patent application, which eventually issued as U.S. Patent No. 6,460,040 ("the '040 patent"). While prosecuting the '040 patent application, the Applicant added a claim (claim 30)[1] with language that originally was virtually identical to claim 1 of the '137 patent:

> 30. In an electronic kiosk system having a plurality of interactive electronic kiosks for displaying information provided by a plurality of information providers, a method for defining custom interface screens customized for individual kiosks of said plurality and operable to make different assortments said information available for display at different kiosks of said plurality, said method comprising:
>
> . . .
>
> [b] providing a plurality of pre-defined interface screen element types, each element type defining a form of element available for presentation on said custom interface screens, wherein each said element type permits limited variation in its on-screen characteristics in conformity with a desired uniform and *aesthetically pleasing look and feel* for said interface screens on all kiosks of said kiosk system,
>
> each element type having a plurality of attributes associated therewith, wherein each said element type and its associated attributes are subject to pre-defined constraints providing element characteristics in conformance with said uniform and *aesthetically pleasing look and feel* for said interface screens, and
>
> wherein said plurality of pre-defined element types includes at least one pre-defined window type, at least one pre-defined hot spot type, and at least one pre-defined multimedia type;
>
> . . .

---

[1] Claim 30 eventually issued as claim 27 of the '040 patent.

>   [d] assigning values to the attributes associated with each of said selected elements consistent with said pre-defined constraints, whereby the ***aggregate layout*** of said plurality of selected elements on said interface screen under construction ***will be aesthetically pleasing*** and functionally operable for effective delivery of information to a kiosk user;
>
>   . . .

Levin Decl. at ¶ 4, Ex. C at 6-7 (emphasis added).

The Examiner[2] rejected claim 30 of the '040 patent application on the grounds that "aesthetically pleasing" is indefinite under 35 U.S.C. § 112, ¶ 2. *See* Levin Decl., ¶ 5, Ex. D. In rejecting claim 30, the Examiner noted:

>   "[A]esthetically pleasing look and feel" is unclear what is meant. Aesthetically pleasing is an individual conclusion and highly subjective.

*Id.* at 2.

In response, Datamize argued that the "aesthetically pleasing" language had already been allowed in the claims of the '137 patent. *See* Levin Decl., ¶ 6, Ex. E at 3. Presumably unpersuaded by Datamize's argument, during a May 1, 2002 telephone call the Examiner apparently stood by his rejection. *See* Levin Decl., ¶ 7, Ex. F at 1. Rather than appealing the Examiner's indefiniteness rejection, Datamize deleted the "aesthetically pleasing" language from the proposed claims. *See id.* at 1-2.

**III.    ARGUMENT**

   **A.    Indefiniteness is a Purely Legal Issue Suitable for Summary Judgment.**

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to prevail as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The question of whether a given claim is indefinite is a matter of law, drawn from the court's role as the construer of patent claims. *See Honeywell Int'l,*

---

[2] The '137 patent and '040 patent applications were reviewed by different Examiners. *See* Levin Decl., Ex. A (Examiner Vincent E. Kovalick reviewed the '137 patent application), Ex. D (Examiner Mohammad Ali reviewed the '040 patent application).

1  *Inc. v. International Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003).  Accordingly, it is

2  suitable for resolution on summary judgment.  *See Mossman v. Broderbund Software, Inc.*, 51

3  U.S.P.Q.2d 1752, 1757, 1999 U.S. Dist. LEXIS 8014, *19 (E.D. Mich. 1999) ("[T]he issue of

4  indefiniteness is a question of law and is properly resolved at the summary judgment stage.").

5        Plumtree respectfully requests that the Court hear Plumtree's summary judgment motion

6  for indefiniteness at the present time.  By resolving this issue now, the Court can forego the

7  burden and expense of construing the remaining terms of the '137 patent.[3]

8        **B.    "Aesthetically Pleasing" Is an Indefinite Claim Term.**

9        The patent statutes require that the words appearing in the claims be sufficiently definite:

10  "The specification shall conclude with one or more claims particularly pointing out and distinctly

11  claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.

12  The purpose of the definiteness requirement is to ensure that the claims adequately notify the

13  public of the scope of the patentee's right to exclude.  *See Honeywell*, 341 F.3d at 1338 (Fed.

14  Cir. 2003); *cf. Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (noting that

15  imprecise claim language creates a "zone of uncertainty" which discourages innovation).

16        When a patent claim does not provide a fair warning of its scope to the public, it is

17  invalid for indefiniteness under § 112 ¶ 2.  *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314

18  F.3d 1313, 1342 (Fed. Cir. 2003) ("One cannot logically determine whether an accused product

19  comes within the bounds of a claim of unascertainable scope."); *Morton Int'l, Inc. v. Cardinal*

20  *Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993) (holding patent invalid where "claims at issue

21  [were] not sufficiently precise to permit a potential competitor to determine whether or not he is

22  infringing").  A claim is indefinite if one skilled in the art would not understand the scope of the

23  claim, when the claim is read in light of the specification.  *See Allen Eng'g Corp v. Bartell*

24  *Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002).

25

26  ---

27     [3] The Court has scheduled a claim construction hearing for the present case on September 1, 2004.  *See* Civil Minutes (9/9/2003) at 2 (Docket No. 23).

28

PLUMTREE'S MOTION FOR SUMMARY JUDGMENT    -7-    2411321_5.DOC
OF INDEFINITENESS
CASE NO. C02-5693 VRW

As discussed in Part II.A, *supra*, claim 1 of the '137 patent recites three separate limitations using the term "aesthetically pleasing." Two of the three limitations at issue require an "aesthetically pleasing look and feel" for the kiosk's interface screens. '137 patent at 20:55-56, 20:62-63. The third limitation requires that the "aggregate layout of said plurality of selected elements on said interface screen under construction will be aesthetically pleasing . . . ." '137 patent at 21:8-12 (emphasis added).

The '137 patent does not give fair notice to the public of what is and is not covered by the three "aesthetically pleasing" limitations. Just as "beauty is in the eye of the beholder," whether something is "aesthetically pleasing" is the epitome of a subjective question, the answer to which will inevitably vary from viewer to viewer. The claims themselves do not explain how to determine whether a given "look and feel" or "aggregate layout" is "aesthetically pleasing." And as discussed below, neither the accepted definitions of "aesthetically pleasing" nor the specification provides any guidance for determining whether the "aesthetically pleasing" limitations are met. Because there can be no agreement on whether something is "aesthetically pleasing," the phrase is hopelessly vague and subjective.[4]

### 1.    The Ordinary Meaning of "Aesthetically Pleasing" is Vague.

The first step in construing a claim term is to determine the term's ordinary and customary meaning. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202, 1204 (Fed. Cir. 2002). As used in the '137 patent's claims, the term "aesthetically pleasing" presumptively carries its ordinary meaning. *See Texas Digital*, 308 F.3d at 1202 (Fed. Cir. 2002) (noting the "heavy presumption" that claim terms are given their ordinary meaning). "Aesthetically pleasing" is a common English phrase, not a technical term. As such, the Court may look to a standard English

---

[4] Plumtree believes that several other terms found in the claims of the '137 patent are also indefinite. To simplify the issues before the Court, Plumtree is focusing the present motion for summary judgment to the issue of whether "aesthetically pleasing" is indefinite. Plumtree reserves the right to argue that additional terms are indefinite should the Court decide to construe the remaining claim terms for the '137 patent.

PLUMTREE'S MOTION FOR SUMMARY JUDGMENT       -8-       2411321_5.DOC
OF INDEFINITENESS
CASE NO. C02-5693 VRW

1  language dictionary for the definitions of these terms.  *See Texas Digital*, 308 F.3d at 1202
2  (holding that a court may use dictionaries to determine a claim term's ordinary meaning).
3        The dictionary defines "aesthetic" as "of or concerning the appreciation of beauty or good
4  taste" and "characterized by a heightened sensitivity to beauty."  Levin Decl., ¶ 13, Ex. L at 28.
5  The dictionary defines "pleasing" as "giving pleasure or enjoyment."  Levin Decl., ¶ 13, Ex. L at
6  1347.  Taken together, the phrase "aesthetically pleasing" means "beautiful" or "having an
7  appearance that gives pleasure" to the viewer — making the definition completely subjective.
8  Thus, the ordinary meaning provides no precision to the "aesthetically pleasing" limitations of
9  claim 1.

### 2.  The Specification Does not Provide Any Precision to the Term "Aesthetically Pleasing."

12        While an otherwise vague claim term may be rendered definite by a patent's specification,
13  that is not the case here.  The '137 patent's specification sheds no light on the meaning of
14  "aesthetically pleasing."
15        The specification does indicate that the "aesthetically pleasing" limitations are important
16  elements of the claimed invention.  In the Summary of the Invention, the inventor emphasized
17  that the alleged invention requires aesthetic user interfaces:

> The present invention provides a multimedia kiosk authoring system for use in developing and maintaining multimedia kiosk systems.  ***The authoring system enables the user interface for each individual kiosk to be customized*** quickly and easily within wide limits of variation, yet ***subject to constraints adhering the res[ult]ting interface to good standards of aesthetics*** and user friendliness.

21  '137 patent, 3:26-32 (emphasis added).[5]  The specification thus makes clear that the claimed
22  authoring system must constrain the discretion of kiosk authors to ensure that the interface screens
23  they develop are attractive.

---

26  [5] *See also* '137 patent, Abstract, lines 3-7 ("The authoring system enables the user interface for each individual kiosk to be customized quickly . . . subject to constraints adhering the resulting interface to good standards of aesthetics . . . .").

1    Although emphasizing that the "aesthetically pleasing" limitations are important, the
2    specification does not offer any definitions of "aesthetics" or any guidance on how to determine
3    what is "aesthetically pleasing." Rather, the patent emphasizes the subjective nature of aesthetics.
4    The Summary of Invention states:

> [M]ajor **aesthetic** or functional design **choices** such as button s[t]yles and sizes, window borders, color combinations, and type fonts as well as hierarchical methods of retrieving information ***may be built into the system taking into account the considered opinions of aesthetic design specialists***, database specialists, and academic studies on public access kiosk systems and user preferences and problems. Only a limited range of pre-defined design choices is then made available to a system author.

'137 patent, 3:52-57 (emphasis added).

As the specification concedes, "aesthetics" are not something on which there is one objective judgment. Rather, they are a matter of "opinion." Indeed, in this context they are to be the subject of multiple "opinions" of aesthetic design specialists. The specification does not state what criteria such specialists would be using in assessing whether a design is aesthetically pleasing. Indeed, it suggests that those skilled in the art do not agree on what is aesthetic, elsewhere stating that the "form of the user interface" is an "active area[] of study, in which no consensus has yet been reached." '137 Patent at 2:55-56. The specification further suggests that opinions of what is aesthetic can change over time. *See id.* at 3:66-4:3 (stating that the authoring tool can be changed "to take into account the results of new studies on user interactions with computer kiosks"). Thus, the specification provides no objective standard for determining whether something is "aesthetically pleasing."

### 3.   The Case Law Establishes that Subjective Terms such as "Aesthetically Pleasing" are Indefinite.

A number of courts have concluded that when subjective terms appear in the claims, they are indefinite. The present case is analogous to the decision in *Mossman v. Broderbund Software, Inc.*, 51 U.S.P.Q.2d (BNA) 1752, 1999 U.S. Dist. LEXIS 8014 (E.D. Mich. 1999). In *Mossman*, the asserted patent recited a method of teaching children using a video screen, "whereby the viewer can *readily follow* the reading of the visual display . . . ." *Mossman*, 51 U.S.P.Q.2d (BNA) at 1757, 1999 U.S. Dist. LEXIS 8014, *18-*19. The asserted patent neither defined "readily

1  follow" nor provided any criteria for determining whether a display could be readily followed.
2  *See Mossman*, 51 U.S.P.Q.2d (BNA) at 1757, 1999 U.S. Dist. LEXIS 8014, *21.  On these facts,
3  the court held that the term "readily follow" was "fatally indefinite."  *Mossman*, 51 U.S.P.Q.2d
4  (BNA) at 1758; 1999 U.S. Dist. LEXIS 8014, *24.

5        The present case is also analogous to *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740 (D. Md.
6  1999), *aff'd* 211 F.3d 588 (Fed. Cir. 2000).  In *STX*, the patent at issue involved a lacrosse stick.
7  The preamble of the asserted claim recited that the lacrosse stick had "improved handling and
8  playing characteristics."  While the court found that the claim was invalid under the on-sale bar
9  because the preamble phrase was not a claim limitation,[6] it held in the alternative that "improved
10 handling and playing characteristics" was indefinite, noting that the phrase was subjective and of
11 uncertain scope.  *See STX*, 37 F. Supp. 2d at 755, *aff'd* 211 F.3d 588 (Fed. Cir. 2000) (affirming
12 ruling that claim was invalid under on-sale bar, but not addressing indefiniteness ruling).

13       Similarly, in *Semmler v. American Honda Motor Co.*, 990 F. Supp. 967, 974-75 (S.D. Ohio
14 1997), the court held that the term "*considerable* fuel savings" was indefinite because the term did
15 not reasonably apprise those skilled in the art of what amount of fuel savings was required to be
16 "considerable."

17       The "aesthetically pleasing" limitation at issue here presents a far more compelling case of
18 indefiniteness than in the cases discussed above.  Neither the claims nor the specification provide
19 any objective standard — or indeed any standard at all — for determining whether particular
20 design choices made by an authoring tool will result in a look and feel that is aesthetically
21 pleasing.  Because the term "aesthetically pleasing" is entirely subjective, one skilled in the art
22 cannot determine whether a particular kiosk authoring system constrains kiosk authors to create
23 only "aesthetically pleasing" user interfaces.  *See Honeywell*, 341 F.3d at 1341 (holding that

---

[6] In certain cases, terms appearing in a claim's preamble are not required limitations.  *See, e.g., IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434-35 (Fed. Cir. 2000). However, in the present case, the term "aesthetically pleasing" appears in claim 1's elements, not the preamble.  Every word in a claim's elements must be given meaning, and no word can be read out of the claim.  *See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 (Fed. Cir. 1996).

1 claims were indefinite because "[c]ompetitors trying to practice the invention or to design around
2 it would be unable to discern the bounds of the invention").[7]  As a result, claim 1 does not provide
3 adequate notice to the public of what subject matter is covered by the claim's three "aesthetically
4 pleasing" limitations.

      **C.**      **The Prosecution History for the Related '040 Patent Further Shows that "Aesthetically Pleasing" is Indefinite.**

7       As discussed in Part II.B, *supra*, the Patent Office has previously found that the term
8 "aesthetically pleasing" is indefinite, a point that Datamize conceded when prosecuting the
9 related application for the '040 patent.  Because the prosecution history for the '040 patent
10 involves the same term ("aesthetically pleasing") that is found in the '137 patent, the '040 patent
11 prosecution history is relevant and should be considered when construing the '137 patent. *See*
12 *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (noting that "the
13 prosecution history of one patent is relevant to an understanding of the scope of a common term
14 in a second patent stemming from the same parent application.").[8]

15       While patents are entitled to a presumption of validity, in the present case, the Examiner
16 for the '137 patent never specifically addressed whether the term "aesthetically pleasing" is
17 indefinite.  When a different Examiner considered identical claim language in the '040 patent
18 application, he found that "aesthetically pleasing" was indefinite, noting "aesthetically pleasing is
19 an individual conclusion and highly subjective."  Levin Decl., ¶ 5, Ex. D at 2.  The only plausible
20 conclusion is that the first Examiner overlooked the "aesthetically pleasing" language in the '137

---

    [7] Notably, in the context of a copyright dispute, this Court previously found that a product's "look and feel" is a "highly indefinite construct." *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1026 (N.D. Cal. 1992), *aff'd in part, rev'd in part*, 35 F.3d 1435 (9th Cir. 1994). If "look and feel" is too indefinite for the realm of copyright — which is designed to protect artistic expression — then surely an "*aesthetically pleasing* look and feel" is too indefinite for a utility patent.

    [8] Moreover, the '040 patent's file history can be used to construe the '137 patent even though the '137 patent had already issued when the '040 patent application was prosecuted. *See Microsoft*, 357 F.3d at 1350.

1   patent's claims, but the second Examiner caught this indefinite language when reviewing the
2   claims for Datamize's '040 patent application.
3       In the '040 patent's prosecution history, Datamize responded to the Examiner's
4   indefiniteness rejection by deleting the "aesthetically pleasing" phrase and arguing that the term
5   was "unnecessary to the claims."  Levin Decl. ¶ 7, Ex. F at 2.  While deleting the term
6   "aesthetically pleasing" from the '040 patent application's claims may have resolved the problem
7   with respect to the '040 patent application, such an approach is unavailable for the *issued* '137
8   patent, which includes the limitations.  In an issued claim, every word in a claim must have
9   meaning.  *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995).
10  The Court cannot rewrite an issued patent's claims to make them valid.  *See Rhine v. Casio, Inc.*,
11  183 F.3d 1342, 1345 (Fed. Cir. 1999) ("We have also admonished against judicial rewriting of
12  claims to preserve validity.").  Nor can the Court read a limitation out of an issued claim.  *See*
13  *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 (Fed. Cir. 1996).
14  Because the indefinite term "aesthetically pleasing" is present in the only independent claim of
15  the '137 patent, the '137 patent should be held invalid in its entirety.

16    **D. Datamize's Proposed Claim Construction of "Aesthetically Pleasing"
17      Provides No Clarity to the Term and Contradicts the '137 Patent's Specification.**

18      Datamize's proposed claim constructions cannot cure the problems with the three
19  limitations at issue here.
20      Though they were included in the parties' jointly prepared list of claim terms to construe
21  pursuant to Pat. L.R. 4-1, Datamize has provided no proposed claim construction for the phrase
22  "aesthetically pleasing look and feel."  *See* Levin Decl., ¶ 12, Ex. K at 3 (number 17).  Nor has
23  Datamize provided any construction for the third "aesthetically pleasing" limitation found in step
24  1[d], which recites an "aggregate layout" that will be aesthetically pleasing.  *Id.*, Ex. K at 3
25  (number 18).  Instead, Datamize insisted that this limitation should be given its "[p]lain
26  meaning" — without providing any explanation of what that alleged plain meaning is.  *See id.*,
27  Ex. K at 3 (number 18).  Accordingly, Datamize cannot rescue these indefinite terms through
28  creative claim construction.

1   Datamize does provide a partial construction for the first limitation in step 1[b]:

| Claim Term | Datamize's Claim Construction |
|---|---|
| Limited variation in its on-screen characteristics in conformity with a desired uniform and aesthetically pleasing look and feel | A degree of variation sufficiently limited to ensure that a user or administrator can create customized screens that are generally uniform and aesthetically pleasing to the system author, but not necessarily to other observers. |

*See* Levin Decl., ¶ 12, Ex. K at 3 (number 15). However, this feeble attempt to provide some meaning to the term "aesthetically pleasing" fails for two reasons:

**First**, even under Datamize's construction, "aesthetically pleasing" is still purely subjective, and therefore indefinite. Datamize has simply shifted the inquiry from what the kiosk authoring tool deems aesthetic to what each kiosk system author deems aesthetic. Thus, under Datamize's construction, the question of whether a given look and feel is "aesthetically pleasing" would turn on the subjective beliefs of each kiosk system author. Under such a claim construction, no competitor could ever determine whether its products practiced Claim 1's "aesthetically pleasing" limitations — without polling each system author who used the accused product. Even then, there is no standard for determining whether the system authors believe the customized screens are aesthetically pleasing. Such a claim does not provide the public with adequate notice of its scope and is therefore indefinite. *See STX*, 37 F. Supp. 2d 740 at 755 (rejecting as indefinite patentee's proposed construction that claimed lacrosse stick had "improved handling and playing characteristics" depending on subjective beliefs of lacrosse player using the stick).

**Second**, Datamize's proposed construction contradicts the specification, and thus cannot be correct as a matter of law. *See Microsoft*, 357 F.3d at 1347 ("When the specification 'makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims . . . .'"). Under Datamize's proposed construction, the "aesthetically

pleasing look and feel" limitation is met if the system author[9] subjectively believes that the customized interface screens are "aesthetically pleasing." However, the specification teaches that the claimed authoring tool pre-defines what is "aesthetically pleasing" and only presents to the system author choices that the authoring tool deems to be "aesthetically pleasing."

> **[M]ajor aesthetic** or functional design **choices . . . may be built into the system** taking into account the considered opinions of aesthetic design specialists, database specialists, and academic studies on public access kiosk systems and user preferences and problems. **Only a limited range of pre-defined design choices is then made available to a system author**.

'137 patent at 3:57-64 (emphasis added). *See also* '137 patent, Abstract (lines 3-7) ("The authoring system enables the user interface for each individual kiosk to be customized . . . subject to constraints adhering . . . to good standards of aesthetics"); 3:28-32 (same); 5:41-44 ("The button placement . . . is an aesthetic choice . . . that is forced by the authoring software. . . ."). *See generally id.* at 3:52-66. Thus, Datamize's proposed construction — which has the system author, not the authoring tool, determine what is aesthetically pleasing — is inconsistent with the specification and therefore improper. As properly construed in light of the specification, step 1[b] requires that the authoring tool limit the variation available to the system author such that all screens created with the tool will have an aesthetically pleasing look and feel.

While Datamize's construction should be rejected for the reasons discussed above, the Court need not decide this issue to resolve the indefiniteness question. Even Datamize's proposed construction does not rescue the claim language from its hopeless subjectivity. Accordingly, the '137 patent should be held invalid for indefiniteness.

---

[9] Datamize's proposed construction also incorrectly equates the concept of "system author" with "users" and "administrators." The '137 patent explains that the person who is using the authoring tool to develop the kiosk interface screens is the "system author." *See* '137 patent at 3:52-57. In the prosecution history, the Applicant explained that it is the *developer* who uses the claimed authoring tool to customize the kiosk interface screens. *See* Levin Decl., ¶ 3, Ex. B at 5-6. Nothing in the specification or file history discloses permitting end users or administrators to customize the kiosk's screens.

## IV. CONCLUSION

For the foregoing reasons, Plumtree respectfully requests that the Court enter an order finding the '137 patent invalid pursuant to 35 U.S.C. § 112 ¶ 2. A proposed order accompanies this motion.

Dated: March 31, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/ Michael B. Levin
         Michael B. Levin

Attorneys for Defendant and Counterclaimant
PLUMTREE, INC.