United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  DATAMIZE, LLC, a Wyoming              No C 02-5693 VRW
    limited liability corporation,
12
              Plaintiff,                      ORDER
13
          v
14
    PLUMTREE SOFTWARE, INC, a
15  Delaware corporation,

16            Defendant.
    _____/
17

18          Plaintiff Datamize, LLC (Datamize), alleges that

19  defendant Plumtree Software, Inc's (Plumtree) corporate portal

20  software infringes a Datamize patent.  In response, Plumtree

21  seeks summary judgment of invalidity of the Datamize patent for

22  indefiniteness.  Doc # 51.  Plumtree argues that use of the term

23  "aesthetically pleasing" in the Datamize patent's  sole

24  independent claim runs afoul of 35 USC § 112 ¶ 2 and renders the

25  patent invalid.  Because the meaning of claim terms is a

26  question of law for the court and because a patent must

27  particularly point out and distinctly claim the invention,

28  "aesthetically pleasing" is too indefinite a term by which to

claim an invention. Plumtree's motion for summary judgment (Doc # 51) is GRANTED.


                                    I

                                    A


          Defendant Plumtree is a developer, marketer and
licensor of "corporate portal software." Decl Michael B Levin
(Levin Decl; Doc # 52) at 2 ¶ 8, Exh G at 2. Corporate portal
software is web-based software that brings together a variety of
personalized and integrated corporate information, such as
sales, marketing and engineering information. See id at 2 ¶ 9,
Exh H at 4. The software can be used to develop corporate
intranet sites that allow employees to access, search and manage
corporate information. See id at 2 ¶ 8, Exh G at 4.

          Plaintiff Datamize alleges that Plumtree's corporate
portal software infringes United States Patent No 6,014,137 (the
'137 patent), which Datamize now owns. See Ans & Counterclaim
(Doc # 11) at 2 ¶¶ 6-9. The '137 patent was originally obtained
by Kevin Burns as the result of a provisional application filed
on February 27, 1996. See generally Patent (Levin Decl at 1 ¶
2, Exh A). Burns had invented an authoring system to be used in
developing and maintaining user interface screens on kiosks or
computers. Id at 3:25-28. The patent's claims describe an
"electronic kiosk system having a plurality of interactive
electronics kiosks" and a method for "defining custom interface
screens customized for individual kiosks." Id at 20:37-38,

United States District Court

For the Northern District of California

20:40.  The system allows quick and easy customization of interfaces across large numbers of kiosks, with large amounts of information potentially available to each individual kiosk.  Id at 3:28-38.

The '137 patent acknowledged the existence of prior art consisting of commercial authoring software used to create and modify computer interface screens; but this software allegedly required substantial effort to create custom screens.  Id at 2:18-20, 3:5-7.  The '137 patent's invention allegedly improves upon the prior art through a kiosk authoring tool that provides the individual creating the kiosk system (the system author) with a "limited range of choices" for customizing the kiosks' interface screens.  Id at 3:52-57.  The system author will only be presented with choices that the authoring tool has found to be aesthetic and functional.  Id at 3:52-66.  This enables system authors with limited computer programming experience to set up kiosk interface screens with ease.  Id at 3:48-52.

The '137 patent contains only one independent claim, describing a method comprised in part of the following steps:

> [b] providing a plurality of pre-defined
> interface screen element types, each element
> type defining a form of element available for
> presentation on said custom interface screens,
> wherein each said element type permits limited
> variation in its on-screen characteristics in
> conformity with a desired uniform and
> <u>aesthetically pleasing look and feel</u> for said
> interface screens on all kiosks of said kiosk
> system,
>> each element type having a plurality of
>> attributes associated therewith, wherein
>> each said element type and its associated
>> attributes are subject to pre-defined con-
>> straints providing element characteristics
>> in conformance with said uniform and
>> /

3

United States District Court

For the Northern District of California

1

2
```
      /
      /
      aesthetically pleasing look and feel for
      said interface screens, and
```

3
```
  * * *
```

4

5
```
  [d] assigning values to the attributes assoc-
  iated with each of said selected elements con-
  sistent with said pre-defined constraints,
```

6
```
  whereby the aggregate layout of said plurality
  of selected elements on said interface screen
```

7
```
  under construction will be aesthetically pleasing
  and functionally operable for effective delivery
```

8
```
  of information to a kiosk user;
```

9
```
  * * * .
```

10   Id at 20:37-21:23 (emphasis added).  The remaining claims in the

11   '137 patent appear to be dependent on this first claim.  See id

12   at 21:24-22:41; Mot Sum J (Doc # 51) at 5:3-5; Opp Mot Sum J

13   (Doc # 60) at 11:1-2.

14           Apparently, the patent examiner for the '137 patent

15   never commented upon the use of the words "aesthetically

16   pleasing" in that patent.  See Opp Mot Sum J at 6:6-7.  Prior to

17   the issuance of the '137 patent, however, Datamize filed a

18   continuation application, which eventually resulted in the

19   issuance of United States Patent No 6,460,040 (the '040 patent),

20   which is not asserted in the present action.  See Levin Decl at

21   2 ¶ 4, Exh C.  The '040 patent contained a claim with language

22   virtually identical to the independent claim in the '137 patent;

23   specifically, the claim in the '040 patent contained the words

24   "aesthetically pleasing" several times.  See Levin Decl at 2 ¶

25   4, Exh C at 6-7.  The examiner for the '040 patent rejected that

26   language and stated that "[a]esthetically pleasing is an

27   individual conclusion and is highly subjective."  Id at 2 ¶ 5,

28   Exh D at 2.  Datamize responded to the examiner by listing its

4

reasons for including the language and pointing out that the examiner for the '137 patent had allowed the language in connection with the '137 patent.  Id at 2 ¶ 6, Exh E at 2-3. Shortly afterward, the patent examiner contacted the prosecuting attorney to inform him that he would allow the claims if the contested language were deleted.  Id at 2 ¶ 7, Exh F at 1. Datamize agreed to do so, apparently on the basis that this change would actually broaden the claims, would reflect the unimportance of the "aesthetically pleasing" language and would expedite the patent's issuance.  See id; Opp Mot Sum J at 8:13-23.

B

The dispute presented in this case actually commenced in the United States District Court for the District of Montana. In May of 2002, Datamize brought suit in that court, alleging that Plumtree had infringed the '137 patent.  10/6/03 Ord (Doc # 32) at 2:3-7.  On December 4, 2002, Plumtree filed an action in the Northern District of California for declaratory judgment. Doc # 1. The Montana action was dismissed for lack of personal jurisdiction on July 8, 2003.  10/6/03 Ord at 2:9-15, 2:25-28. Subsequently, on July 17, 2003, Datamize filed its answer in Plumtree's Northern District action and counterclaimed for patent infringement.  Doc # 11.  A claims construction hearing date was set for September 1, 2004.  Doc # 23.

On October 6, 2003, the court granted Datamize's motion for realignment (Doc # 18), ordering that Datamize be designated

the plaintiff and Plumtree be designated the defendant. 10/6/03 Ord at 12:10-15. Then, on March 31, 2004, Plumtree filed the instant motion for summary judgment on the issue whether the '137 patent is invalid. Doc # 51. Plumtree contends that the '137 patent is invalid because the term "aesthetically pleasing," which appears three times in the patent's sole independent claim, is too indefinite. The court took the matter under submission without a hearing. See Civ LR 7-1(b).

II

A

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp v Catrett, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the

United States District Court

For the Northern District of California

1   pleadings, however, but must produce significant probative

2   evidence supporting its claim that a genuine issue of material

3   fact exists.  <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809

4   F2d 626, 630 (9th Cir 1987).  The evidence presented by the

5   nonmoving party "is to be believed, and all justifiable

6   inferences are to be drawn in his favor."  <u>Anderson</u>, 477 US at

7   255. "[T]he judge's function is not himself to weigh the

8   evidence and determine the truth of the matter but to determine

9   whether there is a genuine issue for trial."  Id at 249.

10          The issue of indefiniteness is appropriate for summary

11   judgment.  Determining the question of indefiniteness is a

12   conclusion "'drawn from the court's performance of its duty as

13   the construer of patent claims * * *.'"  <u>Bancorp Services, LLC v</u>

14   <u>Hartford Life Ins Co</u>, 359 F3d 1367, 1372 (Fed Cir 2004), quoting

15   <u>Atmel Corp v Info Storage Devices, Inc</u>, 198 F3d 1374, 1378 (Fed

16   Cir 1999).  Like claims construction, the determination whether

17   a claim is impermissibly indefinite is a legal conclusion.  Id;

18   <u>All Dental Prodx, LLC v Advantage Dental Products, Inc</u>, 309 F3d

19   774, 778 (Fed Cir 2002); see <u>Honeywell Int'l, Inc v Int'l Trade</u>

20   <u>Comm'n</u>, 341 F3d 1332, 1338 (Fed Cir 2003).  As such,

21   indefiniteness is a question of law appropriate for resolution

22   at the summary judgment stage.  <u>Mossman v Broderbund Software,</u>

23   <u>Inc</u>, 1999 US Dist LEXIS 8014, *19 (ED Mich) (Zatkoff, J).

24   /

25   /

26   /

27   /

28   /

United States District Court

For the Northern District of California

B

1

Plumtree contends that the term "aesthetically pleasing" is impermissibly indefinite as a matter of law and thus invalidates the claims in the '137 patent.  The Patent Act requires, among other things, that the patent's claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 USC § 112 ¶ 2.  "'[T]he limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public.'"  Markman v Westview Instruments, Inc, 517 US 370, 390 (1996), quoting General Elec Co v Wabash Appliance Corp, 304 US 364, 369 (1938).  This is important because

> [o]therwise, a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field [internal citation omitted], and the public [would] be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights [internal citation omitted].

Markman, 517 US at 390 (internal quotations omitted).  Accordingly, the § 112 ¶ 2 definiteness requirement "'focuses on whether the claims * * * adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude.'"  Honeywell, 341 F3d at 1338, quoting S3 Inc v nVIDIA

8

Corp, 259 F3d 1364, 1371-72 (Fed Cir 2001).

In assessing the definiteness requirement, the court should determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification. Bancorp, 359 F3d at 1372. This determination should be made in accordance with "the familiar canons of claim construction." All Dental Prodx, 309 F3d at 780. This means that the court should primarily evaluate the language of the claim itself but should also assess the intrinsic evidence, including the patent specification and prosecution history. Id; see Elekta Instrument SA v OUR Scientific Int'l, Inc, 214 F3d 1302, 1307 (Fed Cir 2000). Although the court may look to extrinsic evidence if necessary to its understanding of the patent, such evidence in general, and expert testimony in particular, is disfavored. See Texas Digital Systems, Inc v Telegenix, Inc, 308 F3d 1193, 1212 (Fed Cir 2002); Elekta Instrument, 214 F3d at 1307.

The court should not hold the claim to be indefinite simply because "it poses a difficult issue of claim construction; if the claim is subject to construction, i e, it is not insolubly ambiguous, it is not invalid for indefiniteness." Bancorp, 359 F3d at 1372 (citing Honeywell, 341 F3d at 1338-39). Evaluating the indefiniteness question in this fashion serves to protect the statutory presumption of patent validity. Bancorp, 359 F3d at 1372 (citing 35 USC § 282); see Honeywell, 341 F3d at 1338-39. When the question of indefiniteness is close, it should be resolved in favor of the patentee. Bancorp, 359 F3d at 1372 (citing Exxon Research &

United States District Court

For the Northern District of California

<u>Engineering Co v United States</u>, 265 F3d 1371, 1375 (Fed Cir 2001)).

**2**

**a**

**i**

The court begins, as it must, with the ordinary and customary meaning of the words "aesthetically pleasing."  See <u>Texas Digital</u>, 308 F3d at 1201-02, 1204.  "The terms used in the claims bear a heavy presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art."  Id at 1202 (internal quotation omitted).  The court may turn to a dictionary to aid it in ascertaining the ordinary and customary meaning of the disputed language.  Id.

Webster's New Collegiate Dictionary defines the word "aesthetic" as "of, relating to, or dealing with aesthetics or the beautiful" or "appreciative of, responsive to, or zealous about the beautiful."  Webster's New Collegiate Dictionary at 61 (9th ed 1990).  This is similar to the definition from the American Heritage Dictionary, Fourth Edition, that Plumtree advances, which defines "aesthetic" as "of or concerning the appreciation of beauty or good taste" or "characterized by a heightened sensitivity to beauty."  Levin Decl at 3 ¶ 13, Exh L at 3.  Webster's New Collegiate Dictionary defines the word

United States District Court

For the Northern District of California

1  "pleasing" as "giving pleasure," which is similar to Plumtree's

2  asserted definition of "giving pleasure or enjoyment."

3  Webster's New Collegiate Dictionary at 903; Levin Decl at 3 ¶

4  13, Exh L at 4.  Taken together, therefore, the phrase

5  "aesthetically pleasing" seems to mean "having beauty that gives

6  pleasure or enjoyment" – in other words, "beautiful."  Such a

7  term seems to the court to be quite subjective.

8

9                              ii

10

11       The court may examine the intrinsic record to

12  determine whether the patent's specification provides an

13  explicit definition of the term that clarifies or differs from

14  its ordinary dictionary meaning.  See <u>Texas Digital</u>, 308 F3d at

15  1204.  In the case at bar, the '137 patent's specification

16  provides little guidance with respect to the meaning of the term

17  "aesthetically pleasing" and does not seem specifically to

18  define the term.  The patent's Summary of Invention uses the

19  term or similar terms in several instances.  For example, the

20  patent states:

21            The authoring system enables the user inter-
          face for each individual kiosk to be customized
22            quickly and easily within wide limits of vari-
          ation, yet subject to constraints adhering the
23            res[ult]ing interface to <u>good standards of
          aesthetics</u> and user friendliness.
24

25  Patent at 3:28-32 (emphasis added).  The Summary of Invention

26  further states:

27            [M]ajor <u>aesthetic</u> or functional design choices
          * * * may be built into the system taking into
28            account the considered <u>opinions of aesthetic
          design specialists</u>, database specialists, and

                              11

**United States District Court**
For the Northern District of California

1          /
          academic studies on public access kiosk systems
2          and user preferences and problems.  Only a
          limited range of pre-defined design choices
3          is then made available to a system author.

4    Id at 3:57-66 (emphasis added).  As Plumtree notes, this

5    language provides no information regarding an objective

6    definition of "aesthetically pleasing."  The language suggests,

7    however, that "aesthetics" are an important limitation on the

8    claimed invention and that whether something is aesthetically

9    pleasing may be subject to different opinions.  The

10   specification, therefore, does not seem to limit the

11   subjectivity of the term "aesthetically pleasing."

12

13                            iii

14

15         The court may also examine the patent's prosecution

16   history to determine whether any light may be shed on the

17   definition of the disputed term.  <u>All Dental Prodx</u>, 309 F3d at

18   780; see <u>Texas Digital</u>, 308 F3d at 1204.  According to the

19   parties, the patent examiner for the '137 patent never raised

20   any concerns regarding the "aesthetically pleasing" phrase.  See

21   Mot Sum J at 12:15-13:2; Opp Mot Sum J at 15:10-11.  But the

22   court may also consider the prosecution history of the related

23   '040 patent.  See <u>Microsoft Corp v Multi-Tech Systems, Inc</u>, 357

24   F3d 1340, 1349 (Fed Cir 2004) (noting that "the prosecution

25   history of one patent is relevant to an understanding of the

26   scope of a common term in a second patent stemming from the same

27   parent application").  As noted above in section I(A), the

28   patent examiner for the '040 patent questioned the term

                                12

United States District Court

For the Northern District of California

"aesthetically pleasing" as being "highly subjective."  See
Levin Decl at 2 ¶ 5, Exh D at 2.  Initially, Datamize responded
to the patent examiner's rejection of the language by offering
various justifications for the language, including: (1) the
language was not intended to imply judgment about relative
artistic merits; (2) whether the system author's sense of
aesthetics complies with some other standard of beauty or good
taste is irrelevant; (3) the point of the language is that the
system author can create an "aesthetically pleasing look and
feel" that the system author "desire[s]".  See id at 2 ¶ 6, Exh
E at 2. Ultimately, Datamize chose to delete the language from
its application for the '040 patent, stating that the language
was "not intended to identify qualities separate and apart from
the remainder of the claim element" and was "superfluous and
unnecessary to the claims."  Id at 2 ¶ 7, Exh F at 1-2.  The
prosecution history of the related '040 patent, therefore, does
not provide a more objective means of ascertaining the meaning
of "aesthetically pleasing."  In fact, the prosecution history
suggests that the language has little meaning at all.

Accordingly, consideration of the relevant factors
suggests that the term "aesthetically pleasing" is impermissibly
indefinite under § 112 ¶ 2.


b


In addition to the above factors, consideration of and
comparison with relevant case law may prove useful.  Plumtree
argues that, when a disputed term is highly subjective, courts

often find that the term is too indefinite to meet the
requirements of § 112 ¶ 2.  For example, in <u>Mossman</u>, the
district court concluded that the term "readily follow" was
impermissibly indefinite, in part because the patent in question
did "not mention or even attempt to establish any criteria for
determining whether a display can be 'readily followed'" and
because the term was "not defined and has no particular meaning
in the [] patent claims."  <u>Mossman</u>, 1999 US Dist LEXIS 8014 at
*21.  Another case cited by Plumtree is <u>STX, Inc v Brine, Inc</u>,
37 F Supp 2d 740 (D Md 1999) (Davis, J), aff'd 211 F3d 588 (Fed
Cir 2000), in which the defendant challenged the term "improved
handling and playing characteristics" in a patent for a lacrosse
stick.  The <u>STX</u> court found the term impermissibly indefinite,
agreeing with the defendant that "this alleged limitation is
subjective on so many levels it is impossible to determine the
scope of [the] term."  Id at 755 (internal quotation omitted).
And Plumtree also cites <u>Semmler v American Honda Motor Co, Inc</u>,
990 F Supp 967 (SD Ohio 1997) (Graham, J).  The <u>Semmler</u> court
concluded that the term "considerable fuel savings" was
impermissibly indefinite because the word "considerable" was
imprecise and did not reasonably apprise a person skilled in the
art of what was meant.  Id at 975.  These three cases dealt with
terms that are similar to the term at issue in the case at bar –
all are terms with very subjective ordinary meanings that are
not sufficiently narrowed by the patents in question.

     Although Datamize does not make much of an attempt to
distinguish these three cases, Datamize argues that the term
"aesthetically pleasing" is more like terms held to be

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

sufficiently definite in the <u>All Dental Prodx</u> and <u>Bancorp</u> cases. In <u>All Dental Prodx</u>, the court concluded that the term "original unidentified mass" was not impermissibly indefinite.  <u>All Dental Prodx</u>, 309 F3d at 780.  But the prosecution history and specification in that case supported the view that the disputed term meant "a mass that does not have a specific preformed size and shape."  Id.  Unlike the "aesthetically pleasing" term in the present case, the meaning of the disputed term in <u>All Dental Prodx</u> is objective and is not controlled by individual subjective impressions.  Datamize also relies on <u>Bancorp</u>, in which the Federal Circuit found the term "surrender value protected investment credits" to be definite.  <u>Bancorp</u>, 359 F3d at 1372.  In so holding, the <u>Bancorp</u> court found that, although the entire term was not separately defined by the patent, its component terms were sufficiently well-defined by the patent to make the meaning of the entire term readily discernable.  Id. Such is not the case in the present action, as the components of the "aesthetically pleasing" term are subjective and not defined by the patent.

Thus, the court agrees with Plumtree that the case law supports finding the term impermissibly indefinite.

c

Although the foregoing would seem to justify ruling that the "aesthetically pleasing" language renders the '137 patent's claims impermissibly indefinite, the court also considers the proposed constructions of "aesthetically pleasing"

15

United States District Court

For the Northern District of California

offered by Datamize in its opposition brief.  First, Datamize appears to contend that "aesthetically pleasing" requirement is met so long as the authoring tool imposes <u>some</u> constraints or limitations on predefined screen elements provided by the system.  Opp Mot Sum J at 10:15-18; see also id at 14:10-13 (stating that "[f]or this claim limitation, the only thing that is important for the purposes of infringement is whether there are pre-defined limitations or constraints placed on the screen elements types in conformity with the system developer's overall design").  But interpreting the language in this fashion is simply not proper.  The patent separately describes the necessity of such "predefined constraints" in paragraph [b] of the independent claim.  See Patent at 20:50-51, 21:7-8.  The term "aesthetically pleasing" must mean something different from predefined constraints or limitations. It is a fundamental principle of patent law that all words in a claim must be given meaning.  <u>Ethicon Endo-Surgery, Inc v United States Surgical Corp</u>, 93 F3d 1572, 1582 (Fed Cir 1996); see <u>Telemac Cellular Corp v Topp Telecom, Inc</u>, 247 F3d 1316, 1325 (Fed Cir 2001); <u>Elekta Instrument</u>, 214 F3d at 1307.  And the court is not permitted to rewrite a claim to preserve its validity.  <u>Allen Engineering Corp v Bartell Indus, Inc</u>, 299 F3d 1336, 1349 (Fed Cir 2002) (citing <u>Rhine v Casio, Inc</u>, 183 F3d 1342, 1345 (Fed Cir 1999)).  Although Datamize may believe the term is unnecessary (as evidenced by their deletion of the term in connection with the '040 patent), the court cannot simply ignore the term as superfluous and read the term out of the claim.

Alternatively, Datamize implies that the "aesthetically

16

**United States District Court**
For the Northern District of California

pleasing" term should be evaluated from the perspective of the system author and that anyone else's perception of the screens is irrelevant.  See Opp Mot Sum J at 13:3-5; 14:7-9.  This is the interpretation of the claim that Datamize has evidently advanced in the claims construction prehearing statement submitted pursuant to Pat LR 4-3.  See Supp Levin Decl at 2 ¶ 6, Exh Q at 6.  But this construction also does not save the term from indefiniteness.  For one thing, the plain language of the claims does not support such a construction.  Nowhere in the claim does the patent limit the "aesthetically pleasing" term to evaluation by the system author.  Cf Patent at 20:37-21:23.  Nor does there appear to be any language in the patent specification that would link the "aesthetically pleasing" requirement with the system author.  Cf id at 3:28-32, 3:57-66.  Datamize points out that the specification states in part that

> major aesthetic or functional design choices * * * may be built into the system taking into account the considered opinions of aesthetic design specialists, database specialists, and academic studies on public access kiosk systems and user preferences and problems.  Only a limited range of pre-defined design choices is then made available to a system author.

Id at 3:57-66.  But this language does not link aesthetics with the preferences of the system author.  In fact, it seems to support a different notion - that the aesthetic choices are determined in accordance with the opinions of "aesthetic design specialists."  The language of the patent simply does not support the construction Datamize advances - surely if the screens were meant only to be "aesthetically pleasing" to the system author, the patent could have so stated.

United States District Court

For the Northern District of California

Moreover, the court would be hard-pressed to construe a patent term so that it would turn on the subjective beliefs of those individuals who will use the authoring tool.  Limiting the arbiters of aesthetics to that group of persons does not change the fact that the meaning of the term is still subjective and cannot be determined by the term's ordinary meaning or anything in the patent or its prosecution history.  Without some objective criteria for what a system author would consider "aesthetically pleasing," a person skilled in the art would be unable to evaluate whether his own invention avoided infringing the '137 patent.

The court thus rejects the claim constructions that Datamize appears to advance for the term "aesthetically pleasing."

d

Datamize seeks to remedy the ambiguous nature of the "aesthetically pleasing" term by offering the expert testimony of Jeremy Rosenblatt, whose expertise is in computer systems and authoring systems.  See Opp Mot Sum J at 18:9-18.  Mr Rosenblatt testifies that he believes the claims of the '137 patent to be neither indefinite nor ambiguous.  Decl Jeremy Rosenblatt (Rosenblatt Decl; Doc # 60, Atch 1) at 1 ¶ 2.  Rosenblatt in part relies upon a scientific paper published in 2000 regarding objective measures for interface aesthetics.  Id at 7 ¶ 19.  Rosenblatt testifies that the term "aesthetically pleasing" is measured from the perspective of the system author and, even

18

were it measured from the perspective of the system's end-users,
the term is sufficiently clear to one of ordinary skill in the
art.  Id at 8 ¶¶ 21, 22.

There are several problems with relying upon the
Rosenblatt declaration.  First, as noted earlier, expert
testimony is disfavored and should not be used to "vary or
contradict" the language of the claim.  <u>Texas Digital</u>, 308 F3d
at 1212; see <u>Honeywell</u>, 341 F3d at 1339.  And, even assuming
that expert opinion is admissible, Rosenblatt seems to have
admitted in deposition testimony that no objective measure of
aesthetics is disclosed in the patent itself or any of the
references cited.  See Depo Jeremy Rosenblatt (Rosenblatt Depo;
Supp Decl Michael B Levin (Supp Levin Decl; Doc # 65) at 1 ¶ 2)
at 51:8-14, 53:2-5, 94:20-25, 108:21-25, 123:25-124:13.

Second, Rosenblatt relies primarily on an article
published in 2000, several years after the application for the
'137 patent was filed.  As Plumtree points out, claim language
ought not to be defined by standards formulated after the
patent's application was filed.  The court ought to "consider
the meaning of the claim as of the date the invention was
constructively reduced to practice – the date the patent
application was filed."  <u>Kopykake Enterprises, Inc v Lucks Co</u>,
264 F3d 1377, 1383 (Fed Cir 2001).  "[W]hen a claim term
understood to have a narrow meaning when the application is
filed later acquires a broader definition, the literal scope of
the term is limited to what it was understood to mean at the
time of the filing."  Id.  Interestingly, the 2000 article upon
which Rosenblatt relies concedes that "[n]o one knows how to

United States District Court

For the Northern District of California

measure aesthetic value" and "[s]ome [] doubt that it can be measured." Supp Levin Decl at 2 ¶ 3, Exh N at 4. The court therefore finds that Datamize's expert testimony does little to provide the court with an acceptable or definite meaning for the term "aesthetically pleasing."

Because the court is unable to construe the term in a way that is supported by the term's ordinary meaning, by the intrinsic evidence or even by the extrinsic evidence, the court must find that "aesthetically pleasing" is hopelessly indefinite. Accordingly, the court GRANTS Plumtree's motion for summary judgment of invalidity (Doc # 51).

III

For the foregoing reasons, the court GRANTS Plumtree's motion for summary judgment on the issue of indefiniteness (Doc # 51). Because the court's judgment appears to invalidate each claim of the '137 patent, plaintiff is entitled to summary judgment of invalidity of the '137 patent. Given that this both resolves Plumtree's declaratory action and undermines Datamize's claim of infringement, this order appears conclusively to dispose of this case. Accordingly, the court VACATES all
/
/
/
/
/
/

20

currently scheduled dates in this matter and directs the clerk

to close the file and terminate all pending motions.

        IT IS SO ORDERED.

                              _____/s/_____

                              VAUGHN R WALKER

                              United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**

For the Northern District of California